# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARGARET GAMON**, an individual, | Case No. 3:23-cv-00216-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **SHRINERS HOSPITALS FOR CHILDREN**, a corporation, | |
| Defendant. | |

Caroline Janzen & Paul Janzen, Rugged Law, Inc., 4550 SW Hall Blvd, Beaverton, OR 97005. Attorneys for Plaintiff.

Sarah Ames Benedict, Meagan A. Himes, Olivia Munson, & Christopher Byer, Davis Wright Tremaine LLP, 560 SW Tenth Avenue, Suite 700, Portland, OR 97205. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff Margaret Gamon ("Plaintiff") brings this action against her former employer, Defendant Shriners Hospitals for Children ("Defendant" or "Shriners Children's"), for terminating Plaintiff's employment after she refused to take the COVID-19 vaccine. Plaintiff brings two claims: 1) religious discrimination in violation of Title VII of the Civil Rights Act of

1964, and 2) religious discrimination in violation of Oregon law, O.R.S. 659A.030. Now before this Court is Defendant's Motion for Summary Judgment ("MSJ"), ECF 81,[1] to which Plaintiff responded ("Resp."), ECF 98, and Defendant replied ("Reply"), ECF 99.

For the reasons set forth below, this Court finds Defendant is entitled to summary judgment based on its affirmative defense of undue hardship. Defendant's Motion for Summary Judgment is GRANTED as to both Plaintiff's Title VII and O.R.S. 659A.030 claims.

## FACTUAL BACKGROUND

This case concerns the termination of Plaintiff's employment from Defendant Shriners Hospital for Children in Portland, Oregon after Plaintiff refused to be vaccinated against COVID-19. Plaintiff was hired as an executive assistant on or around June 1, 1998. Parties' Joint Statement of Facts ("JSOF"), ECF 74 at 2. Shriners Children's hospital in Portland provides care to vulnerable pediatric patients, many of whom are immunocompromised and more susceptible to infection than members of the general population. Declaration of Dr. Dean Blumberg ("Blumberg Decl."), ECF 83 ¶¶ 6–7. As an executive assistant, Plaintiff worked closely with Hospital Administrator Dereesa Reid and other hospital department directors and was "the face of the administration at Shriners Children's Portland hospital." JSOF, ECF 74 at 2

In February 2020, "almost all administrative staff at Shriners Children's Portland hospital transitioned to work from home" due to the COVID-19 pandemic. *Id.* Plaintiff, however, continued to work in-person in the hospital most days. Declaration of Dereesa Reid ("Reid Decl."), ECF 86 ¶ 5. "Beginning in March 2020, Shriners Children instituted rules and

---

[1] Included in Defendant's summary judgment motion is a request for adverse inference sanctions due to Plaintiff's spoliation of evidence. MSJ, ECF 81 at 8. In Defendant's Reply, ECF 99, Defendant moved to strike four categories of statements contained in Plaintiff's Declaration, ECF 98-1, to which Plaintiff has not responded.

regulations to protect against COVID-19, which included the wearing of personal protective equipment, hand-washing and other hygiene protocols, social distancing where possible, and quarantining if necessary." JSOF, ECF 74 at 2.

During that same time-period, Plaintiff posted about the COVID-19 pandemic on social media and expressed concerns about government overreach, including the potential for "vaccine passports" and mandatory vaccinations. *Id.* By August 2021, Plaintiff was researching "the legal obligations of employers in enforcing vaccine mandates," as well as "sample COVID-19 vaccine exemption request forms." *Id.* at 3. "Plaintiff shared sample religious exemption request information and materials she found with others, including other Shriners Children employees." *Id.*

On September 14, 2021, Shriners Children's implemented a COVID-19 Vaccination Policy that required all employees to be fully vaccinated against COVID-19 ("Vaccine Policy"). JSOF, ECF 74 at 3. Like all employees who worked at Shiners Children's Portland hospital, Plaintiff was expected to be fully vaccinated against COVID-19 unless she received an approved medical or religious exemption. Declaration of Kathy Dean ("Dean Decl."), ECF 85 ¶ 8. On or around September 16, 2021, Plaintiff submitted a request for a religious exemption, in which she stated:

> I am writing to request a religious exemption due to my sincere religious belief that prohibits me from injecting any of the three currently available COVID vaccines. This would be a sin and violation of my religious beliefs. All three vaccines available are produced by, derived from, manufactured with, tested on, developed with, or otherwise using aborted fetal cell lines.
>
> As a Christian protecting my body from defilement according to God's law, I invoke my religious right to refuse any vaccine that utilizes abortion-derived cell lines at any stage of the creation of the vaccine. This is protected by Title VII of the Civil Rights Act of 1964, which is a federal law that protects employees against discrimination based on certain specified characteristics: race, color, national origin, sex, and religion.

> Again, my beliefs regarding the sanctity of human life conflict directly with any requirement to inject aborted-tainted vaccinations into my body. The Bible teaches us: "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own." 1 Corinthians 6:19. It further instructs, "Therefore, since we have these promises, dear friends, let us purify ourselves from everything that contaminates body and spirit, perfecting holiness out of reverence for God." 2 Corinthians 7:1.
>
> I therefore, respectfully request an exemption from the COVID vaccination requirement as it violates my sincerely held religious beliefs, practice and observance.

Declaration of Plaintiff Margaret Gamon ("Plaintiff's Decl."), Ex. 1, ECF 98-1 at 7–8.

Plaintiff met with Defendant's Human Resources Director Sarah Risinger on September 23, 2021, five days after submitting her exemption request, to engage in the interactive process. JSOF, ECF 74 at 3. Plaintiff told Ms. Risinger during that meeting that she "did not belong to an organized religion." *Id.* Defendant Shriners Children's denied Plaintiff's religious exemption request and terminated her employment effective October 18, 2021, because she continued to refuse the COVID-19 vaccine. *Id.* at 3–4.

Plaintiff submitted a letter to Defendant appealing the denial of her religious exemption request on October 20, 2021. *Id.* at 4. Defendant's Vice President of Human Resources Kathy Dean reached out to Plaintiff to discuss her appeal. Dean Decl., ECF 85 ¶ 14. Plaintiff responded to Dean's email that she was not available and to email her the decision of the appeal. *Id.* Dean "understood based on Plaintiff's communications that Plaintiff did not want to discuss her appeal further, and closed out Plaintiff's appeal request as she provided no new information." *Id.* Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). JSOF, ECF 74 at 1. On November 15, 2022, the EEOC issued Plaintiff a right to sue letter. *Id.* Plaintiff filed this action on February 13, 2023, alleging that Defendant unlawfully discriminated against her in the workplace based on her religious beliefs, in violation

of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–e-17, and O.R.S. 659A.030. Complaint, ECF 1.[2]

## DISCUSSION

### A. Evidentiary Issues

Defendant moves to strike statements from Plaintiff's declaration supplied in support of her response in opposition to summary judgment pursuant to Local Rule 56-1(b).[3] This Court grants Defendant's request in part.

_____

[2] On October 25, 2023, this Court granted Defendant's Motion to Dismiss with leave to amend. ECF 18. Plaintiff then filed her First Amended Complaint ("FAC"), ECF 19, and Defendant filed another Motion to Dismiss, ECF 22. Plaintiff did not file a timely response to Defendant's Motion to Dismiss. Fourteen days after that deadline, this Court *sua sponte* granted Plaintiff the opportunity to file a response within seven days and noted that Plaintiff's counsel had failed to timely respond to motions to dismiss in three other cases. ECF 23. Plaintiff then filed her response on the last day of that new deadline. ECF 24. This Court ultimately denied Defendant's second Motion to Dismiss, ECF 26, and Defendant filed an Answer ("Amended Answer"), ECF 30.

[3] Pursuant to Federal Rule of Civil Procedure 37(e), Defendant also asks this Court for adverse inference sanctions because Plaintiff has spoliated evidence by destroying electronically stored information ("ESI"). MSJ, ECF 81 at 8; Reply, ECF 99 at 14. This Court ordered Plaintiff to produce "without limitation, the full text message thread(s) between Plaintiff and the other SHC plaintiffs." Declaration of Meagan A. Himes ("Jan. 24 Himes Decl."), Ex. 1, ECF 62-1 at 1 (emphasis added); Order, ECF 63 ("Plaintiff must produce all discovery agreed to in the January 22, 2025, conferral."). Plaintiff produced the data extracted from her cell phone, which "revealed 979 texts that were marked as 'User Deleted' including texts with Former Employees." Declaration of Sarah Ames Benedict, ECF 95 ¶ 3; MSJ, ECF 81 at 13, 17–21. Defendant raised this issue in moving for summary judgment, MSJ, ECF 81 at 8, and Plaintiff did not respond. By failing to respond to Defendant's argument, Plaintiff concedes that she permanently deleted ESI, including hundreds of text messages with other employees of Defendant. *See* Reply, ECF 99 at 13; *Green Bldg. Initiative, Inc. v. Peacock*, No. 3:24-cv-298-SI, 2025 WL 1434993, at *5 (D. Or. May 19, 2025) (collecting cases) ("Generally, the failure to respond to an argument on its merits is grounds for deeming that argument abandoned or conceded."). This Court finds that Defendant would be entitled to adverse inference sanctions both at summary judgment and trial. Defendant asks for adverse inference sanctions concerning the sincerity of Plaintiff's religious beliefs. Reply, ECF 99 at 14. Because Defendant is entitled to summary judgment on other grounds (the affirmative defense of undue hardship), this Court declines to assess how adverse inference sanctions should apply here.

## 1.  Motions to Strike

Defendants move to strike portions of Plaintiff's Declaration, ECF 98-1. Reply, ECF 99 at 20–22. Defense counsel conferred with Plaintiff's counsel regarding these evidentiary issues. *Id.* at 1 ("Pursuant to Local Rule 7-1(a), counsel for Defendant . . . conferred with counsel for Plaintiff regarding Shriners Children's objections to Plaintiff's evidence."). Plaintiff did not respond. In the District of Oregon, "[i]f an evidentiary objection is raised by the moving party in its reply memorandum," as here, "the non-moving party may file a surreply memorandum pursuant to this subparagraph within seven days addressing only the evidentiary objection." L.R. 56-1(b). Because Plaintiff neither responded within seven days nor asked this Court for an extension, Plaintiff has waived her opportunity to reply.

Defendant requests to strike (1) Plaintiff's statement that she informed Defendant she willing to agree to weekly testing, Reply, ECF 99 at 20–21 (citing Plaintiff's Decl., ECF 98-1 ¶ 14), and (2) Plaintiff's statements regarding alleged accommodations of another employee, *id.* at 21 (citing Plaintiff's Decl., ECF 98-1 ¶¶ 12–15).[4]

### a.  Plaintiff's Statement Regarding Weekly Testing

First, Defendant moves to strike Plaintiff's statement from her declaration that she was willing to agree to weekly testing for COVID-19 as an accommodation. *Id.* at 20–21. In her declaration, Plaintiff states the following: "I informed Shriners that I was willing to also wear a mask and do weekly testing, but Shriners refused to accommodate me." Plaintiff's Decl., ECF

---

[4] Defendant also challenges "Plaintiff's statements about alleged communications with other Shriners Children's employees regarding her religious beliefs," Reply, ECF 99 at 21 (citing Plaintiff's Decl., ECF 98-1 ¶¶ 3–5), and "Plaintiff's statement that she decided she could not take any of the COVID-19 vaccines after learning they were 'manufactured and/or tested using fetal cells obtained from aborted babies.'" *id.* (quoting Plaintiff's Decl., ECF 98-1 ¶ 6). Because this Court finds Defendant is entitled to summary judgment on its affirmative defense of undue hardship, this Court declines to address Defendant's request to strike those statements.

98-1 ¶ 14. Defendant argues that "Plaintiff definitively testified at her deposition that she would *not* agree to weekly testing because she felt it was 'invasive.'" Reply, ECF 99 at 20–21 (citing Plaintiff's Deposition, ECF 82-1 at 45). Defendant further argues that "[b]ecause this statement directly contradicts her prior testimony on its face, and Plaintiff does not offer any explanation for the inconsistency, the Court should strike it." *Id.* at 21 (citing *Nelson v. City of Davis*, 571 F.3d 924, 927–28 (9th Cir. 2009)).

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). The rationale behind this rule is that "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Nelson v. City of Davis*, 571 F.3d 924, 927–28 (9th Cir. 2009) (quoting *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975)). This rule "does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." *Kennedy*, 952 F.2d at 266–67. Rather, the Ninth Circuit has cautioned "that the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998–99 (9th Cir. 2009). "[B]efore applying the . . . sanction, the district court must make a factual determination that the contradiction was actually a 'sham.'" *Kennedy*, 952 F.2d at 267.

Here, Plaintiff's declaration contradicts her prior sworn testimony. In her declaration, Plaintiff attests: "I informed Shriners that I was willing to also wear a mask and do weekly testing, but Shriners refused to accommodate me." Plaintiff's Decl., ECF 98-1 ¶ 14. However,

the parties stipulated in their Joint Statement of Facts submitted to this Court that "to engage in

[her employer's] interactive process regarding [Plaintiff's] religious exemption request," Plaintiff

met with Ms. Risinger, Defendant's Human Resources Director, on September 23, 2021. JSOF,

ECF 74 at 3. Plaintiff testified under oath that at the meeting, she "essentially" informed Ms.

Risinger she would not submit to weekly PCR testing:

> Q. Miss Risinger talked to you about ways to potentially accommodate your needs. Correct?
> A. Yes.
> Q. And you were concerned about getting a nasal swab for a PCR test each week because you thought that was invasive.
> A. Um-hum.
> Q. Yes?
> A. Yes. Because I wasn't sick. I didn't have a fever.
> *Q. You told that to Miss Stotts earlier, right? You said I'm not going to do testing, I'm not sick.*
> *A. Yeah. Um-hum.*
> *Q. And that's essentially what you said to Miss Risinger. Correct?*
> *A. Correct.*

Plaintiff's Deposition, ECF 82-1 at 45, Tr. 13:39:23–39:57 (emphasis added). While "newly-

remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily

lead to the striking of a declaration," *Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012),

Plaintiff provides none of those. Plaintiff does not provide any sort of explanation for her change

in testimony. *See generally* Plaintiff's Decl., ECF 98-1. Plaintiff did not submit an errata sheet to

address this contradiction. *See* Fed. R. Civ. P. 30(e) (allowing thirty days for deponents to sign a

statement listing changes to deposition transcript and the reasons for making them). This Court

finds "the contradiction" between Plaintiff's deposition and declaration "was actually a sham" to

create an issue of fact where none existed. *Kennedy*, 952 F.2d at 267 (citation modified).

Accordingly, this Court will strike Plaintiff's statement—"I informed Shriners that I was willing

to also wear a mask and do weekly testing, but Shriners refused to accommodate me," Plaintiff's

Decl., ECF 98-1 ¶ 14—when evaluating the merits of Defendant's summary judgment motion.

### b. Plaintiff's Statements Regarding Alleged Communications of Another Employee

Defendant moves to strike "Plaintiff's statements regarding the alleged accommodation

of another employee," Reply, ECF 99 at 21 (citing Plaintiff's Decl., ECF 98-1 ¶¶ 12–15).

A district court may "only consider admissible evidence in ruling on a motion for

summary judgment." *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). A "declaration used

to . . . oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the . . . declarant is competent to testify on the matters

stated." Fed. R. Civ. P. 56(c)(4). Hearsay evidence is generally inadmissible unless a federal

statute or rule provides otherwise. Fed. R. Evid. 802. Consequently, hearsay evidence that does

not fall under any exception may not be considered in support of an opposition to summary

judgment. *Orr*, 285 F.3d at 773, 778–79.

Here, Plaintiff includes statements in her declaration about another employee's alleged

exemption requests. Plaintiff's Decl., ECF 98-1 ¶¶ 12–15. Defendant moves to strike, in part, on

hearsay grounds. Reply, ECF 99 at 21. Plaintiff states she "personally know[s]" of this employee

and her exemption requests. Plaintiff's Decl., ECF 98-1 ¶ 12. However, this is hearsay, if not

hearsay within hearsay. Plaintiff does not explain how she acquired personal knowledge of this

other employee's exemption requests or why this statement could fall within a hearsay exception.

Plaintiff cannot attest in her declaration what another told her without falling under Federal Rule

of Evidence 802's prohibition against hearsay. This Court finds paragraphs 12, 13, the first

sentence of 14, and the first sentence of 15 should be stricken on hearsay grounds. The remainder

of paragraphs 14 and 15 do not discuss the other employee, so this Court will not strike those portions on hearsay grounds.

Defendant's Motion to Strike, ECF 99, is therefore granted in part.

## B. Summary Judgment

### 1. Legal Standard

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017) (citing Fed. R. Civ. P. 56(a)). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 324). A party must be able to support the facts it puts forth with evidence that would be admissible at trial. *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment," and "a scintilla of evidence is not enough to create a genuine issue of material fact in order to preclude summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citation modified).

### 2. Title VII's Undue Hardship Affirmative Defense

Under Title VII, it is "unlawful . . . for an employer" to "discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). "Religion" in the statute encompasses "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Plaintiff's state law discrimination claim is subject to the identical analysis given that "O.R.S. 659A.030 is modeled

after Title VII." *Snow v. Women's Healthcare Assocs., LLC*, No. 3:23-cv-01393-IM, 2024 WL 3640111, at *5 (D. Or. Aug. 2, 2024) (quoting *Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1100 (D. Or. 2007)).

A plaintiff can assert a claim for religious discrimination under Title VII based on a "failure to accommodate" theory. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). To establish a prima facie case, a plaintiff must show

> (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement.

*Id.* at 606. If "a plaintiff 'makes out a prima facie failure-to-accommodate case, the burden then shifts to [the employer] to show that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.'" *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1216 (9th Cir. 2025) (quoting *Peterson*, 358 F.3d at 606).

The statute exempts when "an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). The U.S. Supreme Court readdressed what constitutes an "undue hardship" in 2023. *See Groff v. DeJoy*, 600 U.S. 447 (2023). The Supreme Court found an undue hardship "is shown when a burden is substantial in the overall context of an employer's business." *Groff*, 600 U.S. at 468. The Supreme Court clarified that undue hardship amounts to more than a *de minimis* burden on an employer, and "considering ordinary meaning," undue hardship means "something closer to [*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)]'s references to 'substantial additional costs' or 'substantial expenditures.'" *Id.* (quoting *Hardison*, 432 U.S. at 83, n.14).

Courts must "apply the [*Groff*] test in a manner that takes into account all relevant factors in the case at hand." *Id.* at 470–71. Undue hardship is *not* limited to financial calculations, but rather, courts applying *Groff* "may consider the accommodation's effect on coworkers, risks to an employer's mission, and health and safety concerns." *Carlson v. City of Redmond*, No. 2:22-cv-01739, 2025 WL 3496535, at *9 (W.D. Wash. Dec. 5, 2025), *appeal filed*, No. 26-127 (9th Cir. Jan. 7, 2026); *see Chavez v. S.F. Bay Area Rapid Transit Dist.*, 723 F. Supp. 3d 805, 821 (N.D. Cal. 2024) (collecting cases). Courts must evaluate the employer's decision when it was made, "with[out] the benefit of hindsight." *Petersen*, 150 F.4th at 1222.

The Ninth Circuit recently applied *Groff* in a case concerning COVID-19 vaccination requirements for healthcare providers. *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211 (9th Cir. 2025). After the governor of Washington imposed a mandate requiring COVID-19 vaccination for certain essential workers, the defendant fire department determined that it "could not accommodate unvaccinated firefighters in their firefighting roles . . . because a firefighter's work requires interfacing with the public," and thus, the defendant "did not have alternative positions for those seeking exemptions, nor could it facilitate their requested accommodation—masking, testing, and social distancing." *Id.* at 1213–15. Acknowledging that "*Groff* raised the bar that defendants must clear to show undue hardship," the Court still "consider[ed] a range of factors that . . . might [be] relevant." *Id.* at 1218. The Ninth Circuit found that the firefighters' requested accommodation of masking, testing, and social distancing in lieu of vaccination would constitute an undue hardship for the fire department. *Id.* at 1219, 1223. Affirming the district court's grant of summary judgment to the fire department, the Ninth Circuit found that the unrebutted medical evidence showed that the plaintiffs' requested accommodation would come at the cost of the health and safety of other firefighters and the public. *Id.* at 1218–20, 1222.

### 3.   Defendant Has Established Undue Hardship as a Matter of Law

Although Plaintiff's refusal to take the COVID-19 vaccine does not appear to have been based on a sincerely held religious belief, even assuming Plaintiff has established a prima facie case, this Court concludes that Defendant is entitled to summary judgment. Based on evidence regarding the risks of COVID-19 to Defendant's mission, Defendant has established that there is no genuine issue of fact precluding summary judgment based on the affirmative defense of undue hardship.[5]

### a.   Evidence at Summary Judgment

Defendant attaches twenty-three exhibits to its Motion for Summary Judgment. *See* Declaration of Sarah Ames Benedict ("Benedict Decl."), ECF 82. Defendants also filed five other declarations in support of their motion for summary judgment. Blumberg Decl., ECF 83; Declaration of Dr. Seth Cohen ("Cohen Decl."), ECF 84; Dean Decl., ECF 85; Reid Decl., ECF 86; and Declaration of Dr. Clare Rock ("Rock Decl."), ECF 87. Plaintiff included a single piece of evidence in opposing the Defendant's motion for summary judgment, Plaintiff's own declaration, ECF 98-1, and attached to that, Plaintiff's COVID-19 Vaccine Religious Exception Request Form, *id.* at 7–8. Because undue hardship is an affirmative defense, this Court begins by discussing Defendant's evidence in detail.

Defendant produced unrebutted evidence that during the COVID-19 pandemic, Defendant was "a vital provider of pediatric healthcare" in Oregon's most populous city.

---

[5] Defendant contests the sincerity of Plaintiff's religious beliefs. See MSJ, ECF 81 at 12–14, 21. Because this Court finds that accommodating Plaintiff's purported religious beliefs would constitute an undue hardship for Defendant, this Court declines to address this argument. *See, e.g.*, *Trusov*, 2025 WL 2462782, at *8 (finding it not "necessary to decide whether [the plaintiff] had a bona fide religious belief or whether any such belief rendered her 'unable' to receive the COVID-19 vaccination" when deciding on other grounds).

Blumberg Decl., ECF 83 ¶ 6. It was "essential" that Defendant "maintain[] full operational

capacity" during this period. *Id.* The COVID-19 pandemic "introduced significant challenges for

hospitals," including "the need to manage increasingly complex operational pressures." *Id.* ¶ 7.

Defendant also produced unrebutted evidence that it specifically faced more severe risks due to

its "sheer volume of patients" and its mission caring for "pediatric patients, many of whom were

immunocompromised and therefore more susceptible to infection than members of the general

population." *Id.* ¶¶ 7–8; *see* Cohen Decl., ECF 84 ¶ 15 ("Shriners Children cares for a highly

vulnerable pediatric patient population with underlying conditions. Because of this, the patients

in Shriners Children's care are generally more susceptible to complications from COVID-19 than

their peers."). "Shriners Children faced an elevated risk of contributing to community

transmission[, and m]aximizing safety was crucial to ensure Shriners Children could maintain

consistent, reliable, and accessible care for its patients." Blumberg Decl., ECF 83 ¶ 8.

Defendant produced unrebutted evidence that from the start of the pandemic, it

implemented various rules and regulations to protects patients and staff from COVID-19, which

included requiring Personal Protective Equipment ("PPE"), hand washing, social distancing, and

quarantining. Blumberg Decl., ECF 83 ¶ 11; *see* Dean Decl., ECF 85 ¶¶ 6–7. The parties

stipulated that "[b]eginning in March 2020, Shriners Children instituted rules and regulations to

protect against COVID-19, which included the wearing of personal protective equipment, hand-

washing and other hygiene protocols, social distancing where possible, and quarantining if

necessary." JSOF, ECF 74 at 2.[6]

---

[6] Plaintiff misrepresents this evidence in her response. Plaintiff states that "Defendant has
presented no evidence regarding the precautions that employees were required to take during the
pandemic before the vaccine mandate, and whether additional precautions would have created a
substantial cost in the overall context of Defendant's business." Resp., ECF 98 at 14–15 (citation

Defendant also produced unrebutted evidence that it faced heightened risks from the Delta COVID variant in mid-2021. Cohen Decl., ECF 84 ¶ 17 ("Although COVID-19 cases had declined in early 2021, they abruptly skyrocketed by 1200% during the Delta surge between June and September 2021, with hospital admissions up by a staggering 600% nationwide and, near the peak, a death toll of 1500 Americans daily."); JSOF, ECF 74 at 3 ("Compared to prior variants, Delta was more transmissible.").

Defendant produced unrebutted evidence that there was "no effective alternative to vaccination in a healthcare setting" for mitigating the spread of COVID-19 among employees and patients. Cohen Decl., ECF 84 ¶ 18; *see id.* ¶ 14 ("A CDC study involving healthcare personnel across eight states between December 2020 and August 2021 showed a vaccine effectiveness of 80% in preventing infection."). Other measures, such as use of PPE and social distancing, had "significant limitations," which included "availability of supplies, expense, and the impossibility of eliminating human error and ensuring that every individual always abided by these guidelines." Blumberg Decl., ECF 83 ¶ 11. Those other measures were all subject to "human error," *id.* ¶ 16, and "suboptimal adherence in a work environment struggling with pandemic-related critical staffing shortages and high levels of burnout." Cohen Decl., ECF 84 ¶ 18. In contrast, "vaccines were a uniquely effective tool because they provided innate immunity without requiring further action from the patient after administration." Blumberg Decl., ECF 83 ¶ 12. "[L]ow vaccination rates in healthcare were linked to higher rates of preventable COVID-19 and subsequent outbreaks." Cohen Decl., ECF 84 ¶ 16. Therefore, "it

---

modified); *see* Reply, ECF 99 at 2, 11 n.3 (bringing this misrepresentation to this Court's attention).

was Shriners Children's opinion, as supported by the data, that no other protective measure would adequately substitute for vaccination." Blumberg Decl., ECF 83 ¶ 16.

The parties stipulated that "[o]n August 25, 2021, the Oregon Health Authority issued a Temporary Administrative Order requiring all healthcare personnel and healthcare staff working in healthcare settings to be vaccinated against COVID-19." JSOF, ECF 74 at 3; *see* Benedict Decl., Ex. 23, ECF 82-4 at 74–80.

The parties further stipulated that Defendant implemented its COVID-19 vaccination policy on September 14, 2021 ("Vaccine Policy"), and "[t]he Vaccine Policy required all Shriners Children employees to be fully vaccinated against COVID-19." JSOF, ECF 74 at 3. Defendant produced unrebutted evidence that it determined its policy would "lower [the] risk of caregivers falling ill, ensuring a more stable workforce to provide uninterrupted care." Blumberg Decl., ECF 83 ¶ 15. Defendant also provided unrebutted evidence that "vulnerable pediatric patients—many of whom were medically ineligible for vaccination at this time—would benefit from reduced exposure to individuals at higher risk of transmitting COVID-19." *Id.*; *see* Cohen Decl., ECF 84 ¶ 12 ("Vaccines for six months and up were not approved until June 2022.").

Defendant produced evidence describing its process for managing Vaccine Policy exemption requests from its employees. Defendant filed a declaration from its Vice President of Human Resources, Kathy Dean, who was responsible for evaluating employee exemption requests. Dean Decl., ECF 85 ¶ 9. "To begin the exemption process, . . . employees were told to submit their requests to Human Resources Director Sarah Risinger," who "reviewed each request and reached out to each employee who submitted a request to schedule a[] meeting to discuss their request." *Id.* ¶ 10. "Once Ms. Risinger had all available documentation and information

from the employee seeking exemption, she escalated each exemption request . . . directly" to Dean. *Id.*

Defendant produced unrebutted evidence that like all employees who worked at Shiners Children's Portland hospital, Plaintiff was expected to be fully vaccinated against COVID-19 unless she received an approved medical or religious exemption. *Id.* ¶ 8. The parties stipulate that "Plaintiff submitted a religious exemption request to Shriners Children on September 16, 2021." JSOF, ECF 74 at 3. Defendant provided unrebutted evidence that Dean "thoroughly reviewed the information Plaintiff provided in her exemption request form and during her meeting with Ms. Risinger" and that "[a]fter reviewing all available documentation and information, [she] determined that Shriners Children could not reasonably accommodate Plaintiff, because allowing Plaintiff to continue to work at Shriners Children while unvaccinated would pose an unacceptable health and safety risk to Shriners Children patients, visitors, and staff." Dean Decl., ECF 85 ¶ 13.

Defendant provided evidence that Plaintiff's position had in-person duties. The parties stipulated that "Plaintiff worked as an Executive Assistant supporting Portland Hospital Administrator Dereesa Reid, department directors, and Shriners Children's Board of Governors." JSOF, ECF 74 at 2. They also stipulated that "[i]n her job at Shriners Children, Plaintiff worked closely with Ms. Reid, was the face of the administration at Shriners Children's Portland hospital, and was responsible for making visitors feel welcome." *Id.*

In support of its motion for summary judgment, Defendant filed a declaration from Reid, Plaintiff's direct supervisor. Reid Decl., ECF 86 ¶ 3. Per Reid, Plaintiff "was a key part of on-site administration at Shriners Children's Portland hospital, responsible for making staff, visitors,

and Shriners Children leadership feel welcomed and helping to directly respond to questions or concerns." *Id.* ¶ 4.

Defendant produced unrebutted evidence that when the pandemic began in 2020, Plaintiff continued to work in person—even as Defendant instructed as many workers as possible to work remotely. The parties stipulated that "[w]hen the COVID-19 pandemic began, almost all administrative staff at Shriners Children's Portland hospital transitioned to work from home." JSOF, ECF 74 at 2; *see* Reid Decl., ECF 86 ¶ 5. Plaintiff "continued to work with [her direct supervisor] in-person in the hospital most days, in order to support hospital operations during the pandemic, so that [Defendant] could continue to provide safe and quality care to . . . patients and support to [the] Board of Directors." Reid Decl., ECF 86 ¶ 5. Ms. Reid further attests that she "agreed with [Plaintiff] that it was necessary for her to remain in-person to the extent possible, given the unique nature of her role and job duties." *Id.* ¶ 6.

Defendant produced evidence that "[d]ue to the nature of her position and job duties, [Plaintiff] could not perform her job fully remotely." *Id.* ¶ 7. Her supervisor attests that "it was essential that [Plaintiff] be physically present at the hospital, to ensure adequate support for emergency hospital operations" and that "[e]ven during the height of the pandemic, [the hospital] continued to have essential staff and Board members that needed to interact face-to-face for administrative support[—Plaintiff]'s job was to be that in-person support, with limited remote work days." *Id.* Plaintiff "also was tasked with physically collecting and sorting mail, and maintaining physical files, and ensuring that Board and committee meetings were supported during the pandemic," *id.* ¶ 8, which required her on-site presence.

### b. Defendant's Evidence Establishes that Accommodating Plaintiff Posed an Undue Hardship for the Hospital

Plaintiff argues that Defendant does not meet its burden because "Defendant has not demonstrated . . . how accommodating Plaintiff's request would have created any real hardship, let alone *undue* hardship to the conduct of its business." Resp., ECF 98 at 14.[7] Plaintiff similarly argues that "Defendant fails to present any credible evidence that it engaged in a specific, focused analysis as to whether it could accommodate Plaintiff's religious exception." *Id.* It is unclear whether Plaintiff argues that Defendant has not shown (a) that allowing Plaintiff to work in-person unvaccinated or (b) that allowing Plaintiff to work remotely would have presented an undue hardship. This Court addresses both in turn.

First, allowing Plaintiff to work in-person unvaccinated would have created a substantial increased cost by jeopardizing Defendant's mission. *Groff* requires courts to consider "*all* relevant factors in the case at hand" when assessing whether an accommodation poses a substantial cost, and thus, an undue hardship. 600 U.S. at 470 (emphasis added). Substantial cost is not limited to economic costs. The undue hardship analysis post-*Groff* still includes "increased safety and liability hazards in the workplace," including the spread of COVID-19. *Trusov v. Or. Health & Sci. Univ.*, No. 3:23-cv-77-SI, 2025 WL 2462782, at *5 (D. Or. Aug. 26, 2025) (citing *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383–84 (9th Cir. 1984)), *appeal filed*, No. 25-5923 (9th Cir. Sept. 19, 2025).

Defendant produced unrebutted evidence that it was a vital provider of pediatric healthcare in Oregon's most populous city and that COVID-19 "jeopardized [Defendant's]

---

[7] Plaintiff also mischaracterizes Defendant's argument. Plaintiff argues that "Defendant wants this Court to employ the pre-*Groff v. DeJoy* "de mimimus [sic] standard." Resp., ECF 98 at 3. Plaintiff failed to identify a single citation from Defendant to pre-*Groff* caselaw. *See id.* In reality, Defendant cites extensive post-*Groff* case law. MSJ, ECF 81 at 26, 37–42.

ability to sustain operations and deliver essential care." Blumberg Decl., ECF 83 ¶¶ 6, 19. At the time Defendant implemented its Vaccine Policy, the Delta COVID variant, which was more transmissible than previous dominant variants, was surging. *See* Cohen Decl., ECF 84 ¶ 17; JSF, ECF 74 at 3. Pediatric approval of vaccinations also lagged, *see* Cohen Decl., ECF 84 ¶ 12, and safely providing pediatric medical care is the crux of "the conduct of [Defendant's] business." 42 U.S.C. § 2000e(j). Plaintiff argues that Defendant "relies on overarching assumptions and suppositions about COVID-19, the vaccines available at the time of these events,[8] and what constituted acceptable risk." Resp., ECF 98 at 2. However, "an employer need not establish that an adverse health or safety event is *certain* to result from an accommodation to establish undue hardship under Title VII." *Bordeaux v. Lions Gate Ent.*, Inc., No. 23-4340, 2025 WL 655065, at *2 (9th Cir. Feb. 28, 2025). "Numerous courts [addressing COVID-19 vaccination requirements] have found the possibility of an unvaccinated individual getting others sick to be a non-speculative risk that a court may consider when performing an undue hardship analysis." *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp. 3d 1117, 1136 (C.D. Cal. 2023) (collecting cases), *aff'd*, No. 23-4340, 2025 WL 655065 (9th Cir. Feb. 28, 2025). And as discussed above, Defendant provided unrebutted evidence there was no effective alternative to mandating vaccination in a healthcare setting. This Court finds Defendant reasonably determined that allowing Plaintiff to work in-person unvaccinated would put Shriners Children's patients, staff,

---

[8] At the time of Plaintiff's exemption request and termination, all three major COVID-19 vaccines were approved for adults by the FDA. The Oregon Health Authority ("OHA") had also issued its vaccine mandate. The parties stipulated that "[t]he FDA issued an initial emergency use authorization (EUA) for the Pfizer BioNTech COVID-19 vaccine on December 11, 2020, followed by an EUA for the Moderna vaccine for certain groups on December 18, 2020, and an EUA for the Johnson and Johnson vaccine in February 2021." JSOF, ECF 74 at 2. OHA "issued a Temporary Administrative Order requiring all healthcare . . . staff working in healthcare settings to be vaccinated" on August 25, 2021. *Id.* at 3.

and visitors at risk from COVID-19 and allowing Plaintiff to work in-person would pose an undue hardship.

Second, Plaintiff's argument that she could have worked remotely fails.

As a threshold matter, the proper inquiry is whether Defendant "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Petersen*, 150 F.4th at 1216 (quoting *Peterson*, 358 F.3d at 606). *Groff* did not change that courts "analyze[] the employee's *requested* or *proposed* accommodation in assessing undue hardship." *Trinh v. Shriners Hosps. for Child.*, No. 3:22-cv-01999-SB, 2024 WL 4356501, at *3 n.3 (D. Or. Sept. 27, 2024) (collecting cases). Plaintiff did not ask to work remotely at the time of her exemption request. Plaintiff's Decl., ECF 98-1 ¶ 15 ("I believe that *if I had asked*, I would have been granted permission to work fully remotely . . ." (emphasis added)); *see Greenberg v. Visiting Nurse Servs. in Westchester, Inc.*, No. 23-cv-4252 (KMK), 2024 WL 4252550, at *9 (S.D.N.Y. Sept. 19, 2024) ("[C]ourts that have allowed Title VII failure-to-accommodate claims involving remote-work requests to survive . . . have consistently noted that the plaintiffs had, in fact, requested such an accommodation . . .").

Even if this Court were to consider remote work as an alternative accommodation, it would still fail to prevent summary judgment. In mid-2021, Defendant "need[ed] to manage increasingly complex operational pressures," Blumberg Decl., ECF 83 ¶ 7, including from the surging Delta variant, JSOF, ECF 74 at 3; Cohen Decl., ECF 84 ¶ 17. It is uncontested that Plaintiff did some remote work. However, Defendant produced evidence that "[d]ue to the nature of her position and job duties, [Plaintiff] could not perform her job fully remotely." Reid Decl., ECF 86 ¶ 7. And in this context, "employers have the ultimate authority to determine what are

the essential functions of a job position, and if it requires in-person work." *Kather v. Asante Health Sys.*, No. 1:22-cv-01842-MC, 2025 WL 1788267, at *8 (D. Or. June 25, 2025), *report and recommendation adopted*, 2025 WL 2374384 (D. Or. Aug. 14, 2025); *see, e.g.*, *Bird v. Alanson M. Randol, D.D.S., P.C.*, No. 6:23-cv-01678-MC, 2025 WL 553580, at *6 (D. Or. Feb. 19, 2025) (granting summary judgment to a dental practice even though the plaintiff-front-office-employee had the "ability to occasionally conduct some work remotely"). Defendant provided evidence from Plaintiff's direct supervisor that Plaintiff needed to physically be present at the hospital "to ensure adequate support for emergency hospital operations." Reid Decl., ECF 86 ¶ 7. Defendant's evidence also supports that Plaintiff's specific job duties, such as supporting Board and committee meetings; physically collecting and sorting mail; and maintaining physical files, required Plaintiff to work in-person. *Id.* ¶ 8. Defendant was not required to "restructure [Plaintiff's] duties or pass them off to another worker." *Gemmrig v. Asante Three Rivers Med. Ctr., LLC*, No. 1:22-cv-01814-AA, 2025 WL 1787524, at *12 (D. Or. June 25, 2025), *report and recommendation adopted*, 2025 WL 2555337 (D. Or. Sept. 5, 2025); *see Henson v. PeaceHealth Peace Harbor Med. Ctr.*, No. 6:23-cv-01101-AP, 2025 WL 4035355, at *8 (D. Or. Nov. 18, 2025), ("For employees whose job duties required in-person work, any accommodation other than leave would have posed an undue hardship on Defendant." (citation modified)), *report and recommendation adopted*, 2026 WL 94605 (D. Or. Jan. 13, 2026).[9]

A recent case from this district is instructive. In *Kather*, the court evaluated Title VII accommodation claims by employees working in administrative roles for a healthcare provider.

---

[9] In addition, Defendant provided evidence that Plaintiff was unwilling to be tested for COVID-19. Plaintiff testified in her deposition that she told Defendant's Human Resources Director that she was "not going to do testing" and was "concerned about getting a nasal swab for a PCR test each week because [she] thought that was invasive. Plaintiff's Deposition, ECF 82-1 at 45, Tr. 13:39:33–39:57.

*Kather*, 2025 WL 1788267, at *11–12. An employee who worked as a health information specialist asserted she could work remotely and that other employees could complete her in-person duties. *Id.* at *11. However, as here, the employee's role "required at least some in-person duties," including "scanning and processing of paper health records." *Id.* The court held that plaintiff did not raise a question of fact. *Id.* The court found only two of the plaintiffs raised triable issues of fact. One had worked completely remotely since the start of the pandemic, and the other had been working completely remotely prior to the pandemic. *Id.* at *11–12.

Plaintiff asserts, without additional admissible evidence, she was able to complete all of her duties while working from home. *Id.* ¶ 19. Even "viewing the evidence in the light most favorable to the non-movant," *Frudden*, 877 F.3d at 828. Plaintiff's "mere allegation and speculation" about whether she would have worked remotely "do[es] not create a factual dispute for purposes of summary judgment," *Nelson*, 83 F.3d at 1081–82. Nowhere in Plaintiff's response brief or declaration does she specifically rebut her supervisor Reid's declaration. And as discussed above, this Court has stricken Plaintiff's statement from her declaration that she was willing to agree to weekly testing for COVID-19 as an accommodation.

Plaintiff also relies on a case from the Fifth Circuit, which is distinguishable from this case. Resp., ECF 98 at 6–7, 11, 13 (citing *Hebrew v. Tex. Dep't of Crim. Just.*, 80 F.4th 717 (5th Cir. 2023)). There, a corrections officer sought a religious exemption from an employer's grooming policy. *Hebrew*, 80 F.4th at 719. The plaintiff sought to keep his hair and beard long for religious reasons, and his employer already permitted female officers to have long hair for any reason. *Id.* at 723–24. The district court granted the defendant's motion for summary judgment applying the *de minimis* standard from *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977). While the appeal was pending, the U.S. Supreme Court issued its decision in

*Groff*. *Id.* at 720–22. The defendant only argued its burden was "more than *de minimis*" and did not "identif[y] any actual costs." *Id.* at 722–23. Applying *Groff*, the Fifth Circuit reversed the district court's entry of summary judgment and remanded. *Id.* at 725. Unlike the defendant in *Hebrew*, Shriners Children's identifies actual costs—health and safety risks from COVID-19—and argues that these costs are substantial under the current legal standard.

Plaintiff also argues that this Court should read Title VII expansively. Plaintiff argues "[t]he current trajectory of caselaw supports a finding that Title VII['s religious accommodation protections ]should be interpreted more expansively and protective of religious liberty, rather than less so" and that "[r]ecent case law demonstrates a jurisprudential shift toward embracing greater religious liberty, rather than constraining it." Resp., ECF 98 at 10–11 (citing cases[10] from the Eighth and Tenth Circuits). Plaintiff's broad argument does not explain how that principle should be applied in light of binding Ninth Circuit Title VII caselaw.

In addition, *Plaintiff misrepresents the content of Defendant's motion*. Plaintiff cites to language supposedly quoted from Defendant, but that language appears nowhere in Defendant's motion. *See* Reply, ECF 99 at 2 (raising this issue). Plaintiff asserts "Defendant's claim that it would have had to assign some tasks to others and that doing so was 'not a realistic or reasonable accommodation' [Doc. 18 at 16] is uncorroborated and simply just a bald assertion."[11] Resp., ECF 98 at 14 (brackets in original). That purportedly quoted language does not appear anywhere in Defendant's summary judgment motion.

---

[10] Plaintiff incorrectly omits the cases' reporter volumes, names, and series in the citations. Resp., ECF 98 at 10–11.

[11] Document 18 on this case's docket is this Court's Opinion and Order granting Defendant's motion to dismiss with leave to amend on October 25, 2023. Since Defendant's summary judgment motion is document 81, this appears to be a typographical error in Plaintiff's briefing.

Defendant has established that accommodating Plaintiff by allowing her to work in-person unvaccinated would have created a substantial increased cost and that Plaintiff could not have been accommodated with fully remote work in fall of 2021. Therefore, Defendant has established its affirmative defense of undue hardship and is entitled to summary judgment on both Plaintiff's Title VII and O.R.S. 659A.030 claims.

**CONCLUSION**

Defendant's Motion for Summary Judgment, ECF 81, is GRANTED.


**IT IS SO ORDERED.**

DATED this 3rd day of March, 2026.


/s/ Karin J. Immergut     
Karin J. Immergut
United States District Judge