IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARGARET GAMON, an individual, | Case No. 3:23-cv-00216-IM |
| Plaintiff, | **OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| v. | |
| SHRINERS HOSPITALS FOR CHILDREN, a corporation, | |
| Defendant. | |

Caroline Janzen & Paul Janzen, Rugged Law, Inc., 4550 SW Hall Blvd, Beaverton, OR 97005. Attorneys for Plaintiff.

Sarah Ames Benedict, Meagan A. Himes, Olivia Munson, & Christopher Byer, Davis Wright Tremaine LLP, 560 SW Tenth Avenue, Suite 700, Portland, OR 97205. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff Margaret Gamon ("Plaintiff") brings this action against her former employer, Defendant Shriners Hospitals for Children ("Defendant" or "Shriners Children's"), for terminating Plaintiff's employment after she refused to take the COVID-19 vaccine. Plaintiff claims religious discrimination under Title VII of the Civil Rights Act of 1964 and O.R.S.

PAGE 1 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

659A.030. Now before this Court is Plaintiff's amended motion for reconsideration of this Court's orders requiring production of Plaintiff's communications with other employees of Shriners Children's and awarding attorney's fees ("Reconsideration Mot." or "Motion for Reconsideration"), ECF 92.[1] Plaintiff now claims that such communications are protected under the attorney-client privilege and common interest doctrine. *Id.* at 2, 18.

For the reasons set forth below, Plaintiff's Motion for Reconsideration is DENIED in full.

## BRIEF BACKGROUND

This case concerns the termination of Plaintiff's employment from Defendant Shriners Children's Portland hospital after Plaintiff refused to be vaccinated against COVID-19. This Court's opinion and order granting summary judgment to Defendant, ECF 102 at 2–5, describes the factual background of this case in detail.

Plaintiff was hired as an executive assistant in June 1998. First Amended Complaint ("FAC"), ECF 19 ¶ 5; Parties' Joint Statement of Facts ("JSOF"), ECF 74 at 2. In September 2021, Shriners Children's implemented a COVID-19 Vaccination Policy that required all employees to be fully vaccinated against COVID-19. JSOF, ECF 74 at 3. On or around September 16, 2021, Plaintiff submitted a request for a religious exemption. FAC, ECF 19 ¶ 11; Declaration of Plaintiff Margaret Gamon ("Plaintiff's Decl."), Ex. 1, ECF 98-1 at 7–8. Defendant Shriners Children's denied Plaintiff's religious exemption request and terminated her

---

[1] Plaintiff initially filed her motion for reconsideration at ECF 90. After this Court requested clarification, ECF 91, Plaintiff filed an amended motion, ECF 92. This Court considers the amended motion, ECF 92. Plaintiff filed an additional response to this Court's order requesting clarification ("Clarification Resp."), ECF 93. Defendant filed a response in opposition to Plaintiff's amended motion for reconsideration, ECF 94.

PAGE 2 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

employment effective because she continued to refuse the COVID-19 vaccine. FAC, ECF 19 ¶ 11; JSOF, ECF 74 at 3–4. Plaintiff filed this action on February 13, 2023, alleging that Defendant unlawfully discriminated against her based on her religious beliefs, in violation of Title VII of the Civil Rights Act and O.R.S. 659A.030. Complaint, ECF 1.

Plaintiff's counsel has individually represented over a dozen former employees of Defendant Shriners Children's ("Former Employees"). *See* Defendant's Response to Amended Motion for Reconsideration ("Reconsideration Mot. Resp."), ECF 94 at 2 (collecting cases). Margaret Gamon is (and has always been) the only plaintiff in *this* action.

**STANDARDS**

**A. Motion for Reconsideration**

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 540 F. Supp. 2d 1176, 1179 (D. Or. 2008) (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "A district court may properly reconsider its decision if it '(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). Additionally, "[m]otions for reconsideration are generally disfavored, and may not be used to present new arguments or evidence that could have been raised earlier." *Adidas Am., Inc.*, 540 F. Supp. 2d at 1180.

"Clear error 'is a very exacting standard' requiring a court to consider a decision 'as more than just maybe or probably wrong; it must be dead wrong.'" *Brooks v. Caswell*, No. 3:14-cv-1232-AC, 2017 WL 2323264, at *5 (D. Or. May 25, 2017) (quoting *Teamsters Local 617*

*Pension and Welfare Funds v. Apollo Group, Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012)) (citation modified). Some courts use "manifest injustice" as "a catch-all factor to capture situations that strike the court as fundamentally unfair." *Raya v. Calbiotech*, No. 3:18-cv-2643-WQH-AHG, 2019 WL 11504688, at *3 (S.D. Cal. Nov. 26, 2019). "[T]he courts of the Ninth Circuit generally treat 'manifest injustice' as very nearly synonymous with 'clear error.'" *Greenspan v. Fieldstone Fin. Mgmt. Grp., LLC*, No. 3:17-cv-233-PK, 2018 WL 4945214, at *6 (D. Or. Aug. 22, 2018), *report and recommendation adopted*, 2018 WL 6682995 (D. Or. Dec. 18, 2018). "Manifest injustice" is a "high bar" for a movant to clear and "requires something beyond a ruling that was prejudicial, or which should have been decided differently." *Nealy v. Shinn*, No. CV-2011-23-PHX-DLR (JFM), 2021 WL 12143042, at *2 (D. Ariz. Nov. 24, 2021) (citation modified).

**B.  Attorney-Client Privilege and Common Interest Doctrine**

Federal common law governs claims of privilege when there are federal question claims and pendent state law claims. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155, 1158 (9th Cir. 2016). The attorney-client privilege protects from disclosure confidential communications between attorneys and clients for the purpose of providing and receiving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (describing the eight-part test). The party seeking to invoke the attorney-client privilege or work-product protection bears the burden of establishing that the communications at issue are privileged. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (citation modified).

Voluntarily disclosing attorney-client privileged documents to a third party will typically destroy the privilege. *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012). The common-interest doctrine provides a *limited* exception to this rule, allowing "attorneys for different clients pursuing a common legal strategy to communicate with each other" to more effectively prosecute or defend their claims. *Id.* at 1129. The doctrine serves to protect "communications passing . . . 'from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.'" *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)).

The common-interest doctrine "applies where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not [otherwise] been waived." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (first alteration in original) (quoting *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)).

## DISCUSSION

Plaintiff moves for this Court to reconsider "any prior orders on [m]otions to compel that permitted [D]efendant to access and obtain privileged data from Plaintiff's phone by the defendant" and to provide relief from this Court's award of attorney's fees. Reconsideration Mot., ECF 92 at 1–2.

Plaintiff appears to ask this Court to reconsider a number of orders, only one of which Plaintiff identifies. The relevant attorney's fees order is this Court's February 6, 2025, Order that awarded attorney's fees to Defendant in the amount of $19,601.12 based on Defendant's

successful motion to compel. Fees Order, ECF 64.[2] Other than the attorney's fees motion, ECF 64, Plaintiff does not specify *which* orders she asks this Court to reconsider. Plaintiff's arguments, however, focus on communications with other former employees of Defendant ("Former Employees"). This Court has issued numerous discovery orders requiring Plaintiff to produce communications with Former Employees. On January 24, 2025, this Court ordered Plaintiff to "produce all discovery agreed to in the January 22, 2025 conferral by [February 11, 2025]." ECF 63. That included the parties' agreement that

> Plaintiff will hire and pay for a mutually agreed-upon vendor to image Plaintiff's phone in order to extract and produce her text messages that will not otherwise be culled for relevance. *This production will specifically include, without limitation, the full text message thread(s) between Plaintiff and the other SHC plaintiffs*, which plaintiff agrees are not privileged.

Declaration of Meagan A. Himes ("Jan. 24 Himes Decl."), Ex. 1, ECF 62-1 (emphasis added). This Court later ordered Plaintiff's counsel to "follow up with Ms. Gamon regarding the issue of text message deletion raised by defense counsel at the hearing and provide a response in writing to defense counsel by Monday, March 3, 2025 at 12:00 p.m." and "turn over all private message conversations on Truth Social, from the time Ms. Gamon's account was created, between her and Plaintiff's counsel's other clients, by Wednesday, March 5, 2025." ECF 69.[3]

---

[2] This Court ordered Plaintiff's counsel to pay $881.65 to reimburse Defendant for the cost of a deposition Plaintiff canceled at the last minute. ECF 60. Plaintiff does not challenge this cost award. Reconsideration Mot., ECF 92 at 5.

[3] In moving for summary judgment, Defendant sought adverse inference sanctions because Plaintiff spoliated evidence by destroying electronically stored information. Defendant's Motion for Summary Judgment, ECF 81 at 8. Plaintiff did not respond. In this Court's opinion and order granting summary judgment to Defendant, ECF 102 at 5 n.3, this Court addressed Defendant's request for adverse inference sanctions due to Plaintiff's deletion of text messages. This Court

PAGE 6 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

In her motion for reconsideration, Plaintiff now raises, for the first time, that she was substantially justified in withholding communications with Former Employees because those communications are protected by the attorney-client privilege. Reconsideration Mot., ECF 92 at 16. Plaintiff's arguments fail because she has waived her right to assert privilege and because the communications are not in fact privileged.

Any privilege over these communications has been waived because Plaintiff stipulated that the communications were not privileged. The parties stipulated that Plaintiff would "produc[e] . . . without limitation, the full text message thread(s) between Plaintiff and the other SHC plaintiffs, *which plaintiff agrees are not privileged*." Jan. 24 Himes Decl., Ex. 1, ECF 62-1 at 1 (emphasis added). Plaintiff did not argue that there were any privileged communications until over six months later. *See* Reconsideration Mot., ECF 92. Plaintiff has provided no additional evidence that the communications were contemporaneously treated as privileged, nor does Plaintiff persuasively explain why this Court should excuse Plaintiff's stipulation and failure to raise the issue earlier.

Even if Plaintiff could overcome waiver, the common-interest privilege is inapplicable. Plaintiff argues the common-interest doctrine of the attorney-client privilege applies because Plaintiff and Former Employees "are represented by the same law firm in federal court with extremely similar causes of action, all involving religious discrimination in employment due to failure to accommodate, and termination on the same date by the same defendant working at the same location." Reconsideration Mot., ECF 92 at 19. However, the common-interest privilege is designed to allow *attorneys for different clients* pursuing a common legal strategy to

---

found Defendant would be entitled to adverse inferences sanctions both at summary judgment and trial because of Plaintiff's spoliation. *Id.*

communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. Here, Plaintiff alleges communications between herself and Former Employees are privileged—not communications between attorneys. As Margaret Gamon is the only plaintiff in this lawsuit and is not a party in any of the other suits, none of the communications are made between co-plaintiffs.

Moreover, Plaintiff cannot establish the communications with Former Employees are privileged based on an alleged joint defense agreement. In a declaration filed with Plaintiff's amended motion for reconsideration, Plaintiff's counsel attests that "Marget [sic] Gamon and our remaining plaintiffs in federal court have executed a Joint Representation Agreement regarding their Title VII wrongful termination litigation against Shriners Hospital." P. Janzen Decl., ECF 92-1 ¶ 8. Plaintiff does not supply the alleged joint defense agreement. Plaintiff also does not specify when the agreement was executed. A joint defense agreement may be unwritten, *In re Pac. Pictures Corp.*, 679 F.3d at 1129, and "may be implied from conduct and situation," *Gonzalez*, 669 F.3d at 978. However, Plaintiff still has the burden of establishing the privileged relationship. *See Graf*, 610 F.3d at 1156. Beyond a few conclusory sentences, Plaintiff has not raised anything to substantiate an agreement between herself and other employees of Defendant. This showing is insufficient to meet Plaintiff's burden of establishing attorney-client privilege.

Plaintiff also cannot establish the communications with Former Employees are privileged because Plaintiff acted as her counsel's agent. Plaintiff argues that the communications are protected because Plaintiff acted as a "third party agent of [her] attorney[s]" by operating as the "point person for Plaintiff's law firm" to coordinate with Former Employees. Reconsideration Mot., ECF 92 at 20 (citation modified). Plaintiff's counsel attests that his firm "appointed Margaret Gamon as [his] firm's 'point person' who was tasked with communicating with all of

[the firm's] clients who were wrongfully terminated from Shriners after their religious exemptions were denied." P. Janzen Decl., ECF 92-1 ¶ 9. Plaintiff "schedule[ed] Zoom calls and communicat[ed] case updates with Shriners clients." *Id.*

However, "voluntarily disclosing privileged documents to third parties will generally destroy the privilege." *In re Pac. Pictures Corp.*, 679 F.3d at 1126–27. In the Ninth Circuit, there is a *narrow* exception that allows for agents of attorneys to fall under the attorney-client privilege. In general, "'[t]he attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice,' as well as to communications with third parties 'acting as agent' of the client." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (first quoting *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2021); and then quoting *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978)).

It strains credulity to find that a client of a law firm acted as an agent protected by the attorney-client privilege. Defendant raises in response that "Shriners Children is aware of no case in which the Ninth Circuit has recognized a counsel's client as counsel's own agent with respect to the counsel's other clients." Reconsideration Mot. Resp., ECF 94 at 20. This Court has likewise been unable to locate such a case. As Defendant also notes, Oregon's Rules of Professional Conduct only allow for attorneys to enter into business relationships with clients under narrow circumstances. *See id.* Oregon Rule of Professional Conduct 1.8(a) states:

A lawyer shall not enter into a business transaction with a client . . . unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

PAGE 9 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

It is unclear from Plaintiff's counsel's declaration whether Plaintiff operated as a the "point person" for Plaintiff's counsel's firm on a purely voluntary basis, or alternatively, whether all of the above requirements for a business relationship with a client were met.[4]

Plaintiff's counsel also broadly argues that their "client should not lose the right to assert her attorney client privilege because our firm fell short." P. Jazen Decl., ECF 92-1 ¶ 7. However, "an attorney's behavior may waive the privilege, even without an explicit act by the client." *In re Pac. Pictures Corp.*, 679 F.3d at 1130. Assertions of the attorney-client privilege "impede full and free discovery of the truth," and thus, this Court is required to "strictly construe" the privilege. *Ruehle*, 583 F.3d at 607 (citation modified). This Court finds communications between Plaintiff and other former Shriners Children's employees are not protected by the attorney-client privilege and Plaintiff was not substantially justified in withholding any communications.

In sum, Plaintiff does not direct this Court to any "intervening change in controlling law," nor does Plaintiff present "newly discovered evidence." *School Dist. No. 1J*, 5 F.3d at 1263.

---

[4] Plaintiff also misrepresents a case in her motion. Plaintiff states that "in a sister district within the Ninth Circuit, the Nevada District Court held that agency privilege protects privileged communications with a third party agent of an attorney under the 'agency privilege' doctrine" and includes a block quotation from the case. Reconsideration Mot., ECF 92 at 20 (citing *Newmark Grp., Inc. v. Avison Young (Can.) Inc.*, No. 2:15-cv-00531-RFB-EJY, 2020 WL 5514156, at *14 (D. Nev. Sept. 14, 2020)). The case does not hold what Plaintiff claims it does. Plaintiff selectively quotes from a part of the Nevada federal court's opinion that is describing what a different court held in a discrete case, *Stenovich v. Wachtell, Lipton, Rosen & Katz*, 756 N.Y.S.2d 367 (Sup. Ct. 2003). Plaintiff then cuts off the block quotation before reaching the crucial context—that the Wachtell court found "an independent basis for waiver of the privilege" and did not directly address the agency privilege issue. *Newmark Grp., Inc.*, 2020 WL 5514156 at *14.

PAGE 10 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff has not met the high bar required for showing a manifest injustice or clear error based on this Court's prior orders requiring production of communications and awarding fees to Defendant. As discussed above, communications with Former Employees are not protected from disclosure by the attorney-client privilege. Plaintiff's Motion for Reconsideration, ECF 92, is denied in full. This Court's prior fee orders, requiring Plaintiff's counsel to pay Defendant $19,601.12 in attorney's fees plus $881.65 in costs, remain in full effect.[5]

## CONCLUSION

Plaintiff's Motion for Reconsideration, ECF 90, and Amended Motion for Reconsideration, ECF 92, are DENIED in full. The parties are hereby ORDERED to file a joint status report within seven days regarding full payment of fees and costs.


**IT IS SO ORDERED.**

DATED this 3rd day of March, 2026.


/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[5] Plaintiff argues the amount of fees, $19,601.12, is excessive. As explained in this Court's prior fees order, the amount "in attorney's fees is appropriate to award Defendant's counsel." Fees Order, ECF 64 at 5. This Court's fee award is already less than $8,500 what Defendant requested. Defendant's statement for attorney fees asked for $28,115. ECF 53. Plaintiff did not file a response to Defendant's statement for attorney's fees. Plaintiff also briefly argues, for the first time, that this Court should reconsider its prior ruling in light of the Excessive Fines Clause of the Eighth Amendment. Reconsideration Mot., ECF 92 at 7–8. Even assuming this argument is not waived, it is inapplicable. The Eighth Amendment's Excessive Fines Clause provides "[p]rotection against excessive *punitive* economic sanctions." *Timbs v. Indiana*, 586 U.S. 146, 154 (2019) (emphasis added). This Court has not imposed a punitive sanction on Plaintiff, but rather, has only imposed a *remedial* sanction based on Plaintiff's conduct during discovery. *See* Fees Order, ECF 64 (applying Fed. R. Civ. P. 37). This Court will not reconsider the amount of fees and costs.

PAGE 11 – OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION